United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JACOB PARENTI, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>COUNTY OF MONTEREY, et al.,<br><br>    Defendants. | Case No. 14-cv-05481-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO EXCLUDE DUPLICATIVE AND INADMISSIBLE EXPERT TESTIMONY; AND REFERRING RULE 26 DISCLOSURE ISSUES TO MAGISTRATE JUDGE SUSAN VAN KEULEN FOR DISPOSITION**<br><br>[Re: ECF 76] |

    This action arises out of the death of thirty-three year old Jacob Parenti, who died in his cell at the Monterey County Jail where he was being held on a probation violation. Plaintiffs are the Estate of Jacob Parenti, Mr. Parenti's minor son, and Mr. Parenti's mother. Plaintiffs assert violations of federal and state law by Monterey County, Sheriff Scott Miller, and Deputy Collins ("County Defendants"), as well as California Forensic Medical Group and Dr. Taylor Fithian ("CFMG Defendants").

    Plaintiffs assert that the CFMG Defendants have designated an excessive number of retained and non-retained experts who offer duplicative and/or inadmissible opinions, and that the CFMG Defendants' disclosures of non-retained experts did not comply with Federal Rule of Civil Procedure 26. Plaintiffs also assert that the County's retained experts offer inadmissible opinions. Plaintiffs ask the Court to (1) limit the CFMG Defendants to one retained expert on the topics of

cause of death and adequacy of medical care, (2) exclude inadmissible opinions of experts retained by the CFMG Defendants and the County Defendants, and (3) prohibit testimony by the CFMG Defendants's non-retained experts who were not adequately disclosed as required by Rule 26.

For the reasons discussed below, Plaintiffs' motion is GRANTED IN PART AND DENIED IN PART, and the Rule 26 disclosure issues are REFERRED to Magistrate Judge Susan van Keulen for disposition.

**I. DISCUSSION**

**A. CFMG Defendants' Retained Experts – Duplication**

Plaintiffs contend that the CFMG Defendants have designated multiple retained healthcare professionals who will offer duplicative and cumulative opinions regarding the cause of Mr. Parenti's death and whether the medical services provided to Mr. Parenti met the standard of care. Plaintiffs ask the Court to exercise its discretion to limit CFMG to a single retained expert on these topics. In response, the CFMG Defendants assert that their retained experts come from different backgrounds and thus offer different bases for their opinions, and that no one expert's opinion overlaps in its entirety with any other opinion.

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . needlessly presenting cumulative evidence." Fed. R. Evid. 403. Moreover, the Court has authority to limit the extent of discovery otherwise allowed by federal or local rules if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

The Court finds it impossible to determine based on the current record whether exclusion of any of CFMG's experts is appropriate under these standards. Trial is not set to commence for eighteen months, and none of the experts has yet been deposed. The Court understands that Plaintiffs brought this motion at least in part for the very purpose of avoiding the costs of those depositions. *See* Olney Decl. ¶ 4 ("To even depose each of CFMG's experts at their required rates of up to $650 per hour, Plaintiffs' costs and fees could easily exceed $30,000."), ECF 76-1. However, the CFMG Defendants have the right to designate the experts of their choice, and it does

not appear – at least on this record – that there is complete overlap with respect to any one expert witness which would justify that expert's exclusion. There is no suggestion that the disclosure is in bad faith or for any improper purpose. Accordingly, Plaintiffs' request that the Court limit the CFMG Defendants to a single retained expert on the issues of cause of death and standard of care is DENIED.

The Court does, however, direct the parties to meet and confer regarding the order of the depositions so that the retained experts who are most likely to testify are deposed first. Plaintiffs may wish to depose the one or two experts most likely to testify and seek permission to conduct late depositions of the other experts after the close of discovery in the event such depositions become necessary. In the event that experts who appeared most likely to testify are not called at trial, the Court would entertain a motion by Plaintiffs for cost-shifting with respect to the depositions of those experts.

### B. CFMG Defendants' Retained Experts – Admissibility

Plaintiffs also challenge the admissibility of certain aspects of the opinions offered by two of the CFMG Defendants' retained experts, Kimberly Pearson, R.N., and Frank Sheridan, M.D.

#### 1. Ms. Pearson

Ms. Pearson, a Registered Nurse, offers opinions regarding the standard of medical care provided to Mr. Parenti by the CFMG nursing staff and the cause of Mr. Parenti's death. *See* Pearson Report, Exh. 2 to Olney Decl., ECF 76-1. Plaintiffs do not dispute Ms. Pearson's qualifications to offer such opinions. However, Plaintiffs do object to Ms. Pearson's statements regarding other individuals' state of mind as well as statements that could be construed as legal opinion. For example, Ms. Pearson opines that the CFMG nursing staff "were not subjectively aware whether or not Mr. Parenti had a serious medical condition beyond signs and symptoms of an upper respiratory infection in January 2014, and they did not consciously disregard his healthcare needs." *Id.* at 14. She also opines that "CFMG nursing staff did not attempt to harm Mr. Jacob Parenti." *Id.* at 18. Those opinions would be inadmissible at trial. *See Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013) ("Courts routinely exclude as impermissible expert testimony as to intent, motive, or state

3

of mind."); *Pinal Creek Grp. v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037, 1043 (D. Ariz. 2005) (expert witness may not give an opinion on a question of law).

Plaintiff's motion to exclude is GRANTED with respect to Ms. Pearson's opinions regarding the state of mind of other individuals or questions of law. Ms. Pearson may, however, testify regarding the conduct of individuals in response to properly stated questions.

### 2. Dr. Sheridan

Dr. Sheridan, a pathologist, offers the opinion that the cause of Mr. Parenti's death was acute heroin toxicity. *See* Sheridan Report, Exh. 2 to Olney Decl., ECF 76-1. Plaintiffs assert that Dr. Sheridan's opinion is inadmissible because he failed to perform an adequate differential diagnosis. "Differential diagnosis, or differential etiology, is a standard scientific technique of identifying the cause of a medical problem by eliminating the likely causes until the most probable one is isolated." *Clausen v. M/V NEW CARISSA*, 339 F.3d 1049, 1057 (9th Cir. 2003) (citation omitted). "The first step in the diagnostic process is to compile a comprehensive list of hypotheses that might explain the set of salient clinical findings under consideration." *Id.* "After the expert rules in all of the potential hypotheses that might explain a patient's symptoms, he or she must then engage in a process of elimination, eliminating hypotheses on the basis of a continuing examination of the evidence so as to reach a conclusion as to the most likely cause of the findings in that particular case." *Id.* at 1058. Federal courts generally have found properly conducted differential diagnoses to be admissible under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *Clausen*, 339 F.3d at 1057. However, a district court is justified in excluding evidence if the expert fails to explain why an alternative cause was ruled out. *Id.* at 1058.

Plaintiffs appear to assume that Dr. Sheridan performed a differential diagnosis and they challenge the adequacy of that diagnosis based on Dr. Sheridan's failure to rule out as a possible cause of death – or even to address – a finding in the Monterey County toxicology report that Mr. Parenti's blood sample revealed a level of amitriptyline in the toxic range. That argument is unpersuasive, because Dr. Sheridan's report does not indicate that he utilized differential diagnosis methodology to reach his conclusion regarding cause of death. *See* Sheridan Report, Exh. 2 to

4

Olney Decl., ECF 76-1. Dr. Sheridan states that his opinion is based on review of two separate autopsy reports, microscopic slides from both autopsies, toxicology reports, investigative reports, and other materials. *Id.* He notes that the autopsy report prepared by Monterey County determined the cause of death to be "Acute mixed drug intoxication," while the autopsy report prepared by Dr. David Posey determined the cause of death as "viral flu syndrome complicated by pneumonia, sepsis, systemic inflammatory response syndrome, septic shock and multi-organ system failure." *Id.* at 125. Dr. Sheridan then opines that "[t]he evidence in this case points clearly to death being the result of acute heroin toxicity" and gives his reasons for rejecting the conclusion of sepsis and organ failure presented in Dr. Posey's autopsy report. *Id.* Dr. Sheridan does not purport to address "all of the potential hypotheses that might explain a patient's symptoms" as would be required for a differential diagnosis. *See Clausen*, 339 F.3d at 1058. Since it does not appear that Dr. Sheridan performed a differential diagnosis at all, Plaintiffs' argument that he did not perform an "adequate" differential diagnosis provides no basis for exclusion.

To the extent that Plaintiffs argue that differential diagnosis is the *only* methodology which may be used to determine cause of death, such argument is unsupported by the case law. "While the Ninth Circuit has stated that 'a reliable differential diagnosis passes muster under *Daubert*,' it has not *required* experts to use that method when reaching their conclusions." *Carrion v. United States*, No. 2:13-cv-00419-RFB-NJK, 2016 WL 4087104, at *5 (D. Nev. July 28, 2016) (quoting *Clausen*, 339 F.3d at 1058). Thus a district court need not exclude an expert's opinion on causation simply because the expert did not apply differential diagnosis. *See Millenkamp v. Davisco Foods Int'l, Inc.*, 562 F.3d 971, 979 (9th Cir. 2009) (Exclusion was not warranted because expert "did not purport to employ differential diagnosis, and *Clausen* does not preclude the use of all other methods to determine the cause of an illness"); *Carrion*, 2016 WL 4087104, at *5 ("While differential diagnosis is one universally accepted method for establishing medical causation in certain contexts, a plaintiff can nonetheless present expert medical testimony that does not include this method provided that it meets Rule 702's threshold reliability requirement.").

The cases cited by Plaintiffs are not to the contrary. In *Nelson* and *Whisnant*, the Ninth

Circuit held that the district courts had not abused their discretion in excluding expert opinions that expressly relied on differential diagnosis but failed to consider alternate causes. *Nelson v. Matrixx Initiatives, Inc.*, 592 F. App'x 591, 592 (9th Cir. 2015); *Whisnant v. United States*, 274 F. App'x 536, 537 (9th Cir. 2008). In *Morin*, the Ninth Circuit held that the district court had not abused its discretion in concluding that the expert's methodology was not sufficiently reliable where it was unclear whether or how the expert had applied differential diagnosis. *Morin v. United States*, 244 F. App'x 142, 143 (9th Cir. 2007).

Plaintiffs' motion to exclude Dr. Sheridan's opinion for lack of an adequate differential diagnosis is DENIED.

### C. County Defendants' Retained Experts – Admissibility

Plaintiffs also challenge the admissibility of the opinions offered by the County Defendant's two retained experts, James Sida and Timur Durrani, M.D.

#### 1. Mr. Sida

Mr. Sida is offered as an expert on jail operations, policies and procedures. Plaintiffs contend that he goes well beyond that subject matter and offers numerous inadmissible legal opinions, medical opinions, and other opinions outside the scope of his expertise. The parties, and in particular the County Defendants, have provided what amounts to a line-by-line analysis of Mr. Sida's lengthy report. *See* Sida Report, Exh. 1 to Olney Decl., ECF 76-1. The Court declines to address Mr. Sida's report at that level of detail at this stage of the proceedings, that is, before Mr. Sida is deposed and a year and a half before trial. However, Plaintiffs' motion is well-taken with respect to the categories of opinions they identify, as discussed below.

##### a. Legal Opinions

"Expert testimony is admissible when it will assist the trier of fact in understanding the evidence or determining a disputed issue of fact." *Pinal Creek Grp.*, 352 F. Supp. 2d at 1042. However, experts may not opine about how the law should apply to the facts of a particular case. *Id.* "Testimony which articulates and applies the relevant law . . . circumvents the [fact finder's] decision-making function by telling it how to decide the case." *Id.* (internal quotation marks and citation omitted) (alterations in original).

Mr. Sida offers a number of opinions purporting to apply the relevant law to the facts of this case in a manner expressly prohibited by the above standards. For example, he states that "it is clear to me that the Sheriff and County is [sic] not indifferent to crowding and other jail issues," and that "[i]t is my conclusion that the medical services provided in the Monterey County Jail meet Constitutional requirements from a jail management perspective." Sida Report, Exh. 1 to Olney Decl. at 24, 29, ECF 76-1. These and all similar opinions would be excluded at trial.

Plaintiff's motion to exclude is GRANTED with respect to Mr. Sida's legal opinions. The Court notes that Mr. Sida does appear to be qualified to testify regarding jail management, policies, and practices. Therefore, while some of his opinions are inartfully cast as legal opinions in his report, he may be able to testify regarding the underlying subject matter of those opinions in response to proper questioning.

### b. Medical Opinions

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify" if the expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Mr. Sida is not a medical professional, yet he offers medical opinions regarding the standard of medical care provided by the CFMG Defendants and the cause of Mr. Parenti's death. Plaintiffs cite numerous examples of such opinions in their motion, only a few which are set forth here by way of example. Mr. Sida states that "I have found that the Monterey County Sheriff's Department, by way of their jail staff, does provide adequate custodial medical care which meets the standard of medical care in the community." Sida Report, Exh. 1 to Olney Decl. at 24-25, 29, ECF 76-1. He also opines that "I believe that Mr. Parenti passed very quickly and therefore it would be unreasonable to expect that Deputy Collins could have foreseen the serious consequence of Mr. Parenti's ingestion of heroin." *Id.* at 35. In another example, Mr. Sida "assert[s] that the Monterey County Sheriff's Department and their medical service contractor, CFMG did, in fact, comply with professional standards established in the State of California, which includes competent and appropriate medical treatment to Mr. Parenti and their timely response in the emergency that preceded Mr. Parenti's death." *Id.* at 53. These and similar medical opinions would be excluded at trial.

Plaintiff's motion to exclude is GRANTED with respect to Mr. Sida's medical opinions. While Mr. Sida may not offer medical opinion regarding the adequacy of medical services actually provided to Mr. Parenti, he does appear to be qualified to testify regarding the appropriate *level* of medical services for which a facility such as the Monterey County Jail should contract.

### c. Opinions Regarding Drug Smuggling

Mr. Sida offers opinions regarding the smuggling of drugs into the Monterey County Jail. While he appears to be qualified to opine regarding drug smuggling in jails generally, his report does not disclose an adequate basis for his opinions regarding smuggling in Monterey County Jail in particular. *See Lopez v. I-Flow Inc.*, No. CV 08-1063-PHX-SRB, 2011 WL 1897548, at *10 (D. Ariz. Jan. 26, 2011) ("Under Rule 26, an expert's written report must include an explanation of the basis and reasons for each expressed opinion."). Accordingly, Mr. Sida's opinions regarding drug smuggling in the Monterey County Jail would be excluded at trial.

Plaintiff's motion to exclude is GRANTED with respect to Mr. Sida's opinions regarding drug smuggling at the Monterey County Jail. He may testify regarding drug smuggling in jails generally.

### d. Opinions Regarding In-Custody Deaths

Mr. Sida also offers opinions regarding the statistical significance of the number of in-custody deaths that occurred at the Monterey County Jail. For example, he opines that the three in-custody deaths that occurred in 2014 "are simply events and not trends relating to in custody deaths in the jail." Sida Report, Exh. 1 to Olney Decl. at 39, ECF 76-1. Mr. Sida's report does not identify any background, education, or training in the field of statistics. He provides a chart comparing in-custody deaths in Monterey County with such deaths in fourteen other "comparable counties," but he does not provide an adequate basis for limiting his comparison to the selected counties while excluding dozens of other California counties. Accordingly, Mr. Sida's opinions regarding the statistical significance of the in-custody deaths at the Monterey County Jail would be excluded at trial.

Plaintiff's motion to exclude is GRANTED with respect to Mr. Sida's opinions regarding the statistical significance of in-custody deaths at the Monterey County Jail.

    **e.**  **Rebuttal Opinion**

"[A] rebuttal expert cannot offer evidence that does not contradict or rebut another expert's disclosure." *Theoharis v. Rongen*, No. C13-1345RAJ, 2014 WL 3563386, at *3 (W.D. Wash. July 18, 2014). Plaintiffs argue that portions of Mr. Sida's rebuttal report to one of Plaintiffs' experts, Jeffrey Schwartz, go beyond mere rebuttal and are intended to buttress opinions offered in Mr. Sida's own expert report. *See* Sida Rebuttal Report, Exh. 10 to Olney Decl., ECF 76-2. Plaintiffs' argument is well-taken, and the County Defendants offer no meaningful opposition.

Plaintiff's motion to exclude is GRANTED with respect to Mr. Sida's rebuttal opinions which do not actually contradict or rebut Mr. Schwartz's opinion.

The Court notes that the County Defendants argue that the rebuttal report of Plaintiffs' expert, Mr. Schwartz, also exceeds the permissible scope of rebuttal evidence. The County Defendants have not moved to exclude testimony of Plaintiffs' expert, and thus their argument regarding Mr. Schwartz's rebuttal report is not addressed in this order.

  **2.**  **Dr. Durrani**

Dr. Durrani offers opinions primarily regarding the services provided by the Monterey County Public Health Department. *See* Durrani Report, Exh. 1 to Olney Decl., ECF 76-1. For example, he opines that the Department "acted appropriately in assisting the jail by balancing the needs to protect public health while not placing an onerous burden on the jail, the staff and the inmates." *Id.* at 78. Dr. Durrani further opines that the Public Health Department "meets the standard of care expected of local health officers when dealing with disease outbreaks in correctional facilities. *Id.* at 79. Plaintiffs contend that Dr. Durrani is not qualified to give these and similar opinions because he does not have any background in the correctional field. Plaintiffs also contend that Dr. Durrani does not actually offer any original analysis but merely parrots the deposition testimony of Ms. Kristy Michie.

The Court concludes that Dr. Durrani may testify on topics within his area of expertise, such as the functioning of the Monterey County Public Health Department and the standard of care for a county public health department. However, the Court is troubled by Dr. Durrani's opinions regarding a correctional facility's ability to implement commonly applied public health

techniques for identifying the nature of a contagious pathogen and mitigating its transmission. It appears that Dr. Durrani has relied on Ms. Michie's testimony regarding the correctional facility's capabilities. To the extent that Dr. Durrani's opinions are based solely on Ms. Michie's testimony, they will be excluded at trial. *See Dep't of Toxic Substances Control v. Technichem*, Inc., No. 12-CV-05845-VC, 2016 WL 1029463, at *1 (N.D. Cal. Mar. 15, 2016) (excluding expert opinion in part because expert "often does no more than regurgitate information given to him by other sources").

At the hearing counsel for the County Defendants stated that Dr. Durrani's opinions are offered only to counter any claim of liability based on deficiencies by the Monterey County Public Health Department, not to bolster the County's position regarding the jail's response. Insofar as it is not clear whether this issue will be presented at trial, and the County Defendants' clarification of Dr. Durrani's potential testimony, the Court is not prepared to exclude Dr. Durrani entirely at this time.

Accordingly, Plaintiffs' motion to exclude Dr. Durrani is GRANTED to the extent that his opinions are based solely on Ms. Michie's testimony and otherwise is DENIED.

### D. CFMG Defendants' Non-Retained Experts – Rule 26 Disclosure Issues

Finally, Plaintiffs argue that the CFMG Defendants' non-retained experts should be stricken because the CFMG Defendants' disclosures did not satisfy Federal Rule of Civil Procedure 26. The Rule 26 disclosure issues raised by Plaintiff are REFERRED to Magistrate Judge Susan van Keulen for disposition. Judge van Keulen's chambers will contact counsel if Judge van Keulen wishes supplemental briefing or oral argument on these issues.

## II. ORDER

IT IS HEREBY ORDERED THAT:

(1) Plaintiffs' request that the Court limit the CFMG Defendants to a single retained expert on the issues of cause of death and standard of care is DENIED;

(2) Plaintiff's motion to exclude Ms. Pearson's opinions regarding the state of mind of other individuals and questions of law is GRANTED;

(3) Plaintiffs' motion to exclude Dr. Sheridan's opinions is DENIED;

(4) Plaintiffs' motion to exclude Mr. Sida's opinions is GRANTED IN PART as to the categories of opinions identified in this order and otherwise is DENIED;

(5) Plaintiffs' motion to exclude Dr. Durrani's opinions is GRANTED IN PART as to opinions based solely on Ms. Michie's testimony and otherwise is DENIED; and

(6) Plaintiffs' motion to exclude the CFMG Defendants' non-retained experts for failure to comply with Federal Rule of Civil Procedure 26 is REFERRED to Magistrate Judge Susan van Keulen for disposition.

Dated: May 3, 2017

/s/ Beth Labson Freeman
BETH LABSON FREEMAN
United States District Judge