**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| JACOB PARENTI, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>COUNTY OF MONTEREY, et al.,<br><br>    Defendants. | Case No. 14-cv-05481-BLF<br><br>**ORDER APPROVING SETTLEMENT OF MINOR'S CLAIMS**<br><br>[Re: ECF 136] |

Plaintiff D.P-O, a minor, by and through his guardian Mathew Oberholtz, individually and on behalf of the Estate of Jacob Parenti, together with Plaintiff Susan Parenti petition the Court for an order approving the parties' proposed settlement, and of the settlement on behalf of a minor included therein. Mot., ECF 136. For the reasons stated below, the Court GRANTS the motion.

## I. BACKGROUND[1]

Minor D.P-O, by and through his legal guardian Matthew Oberholtz, as an individual and on behalf of the Estate of Jacob Parenti, along with his grandmother Susan Parenti (collectively, "Plaintiffs"), filed this action against Defendants County of Monterey ("County"), Scott Miller, Officer Collins, California Forensic Medical Group, and Taylor Fithian, M.D., alleging six causes of action: (1) deliberate indifference to serious medical needs and failure to protect from harm in violation of the Eighth and Fourteenth Amendments, under 42 U.S.C. § 1983; (2) deprivation of substantive due process in violation of the First and Fourteenth Amendments, under 42 U.S.C. § 1983; (3) failure to furnish or summon medical care, under California state law; (4) negligent supervision, training, hiring, and retention, under California state law; (5) negligence, under California state law; and (6) wrongful death, under California Civil Procedure Code § 377.60. *See generally* Compl., ECF 1.

---

[1] This section is based on allegations made in the Complaint. The Court accepts these allegations as true for the purposes of ruling on this motion.

Susan Parenti is the mother of Jacob Parenti ("Mr. Parenti"). *Id.* ¶ 10. Mr. Parenti lived with his mother in his youth. Compl. ¶ 30. When he was older, he regularly helped his mother, by doing household chores and acting as her caretaker. Compl. ¶ 38. D.P-O is the seven-year-old[2] minor son and sole heir of Mr. Parenti. Compl. ¶ 8. After D.P-O was born in 2007, he lived with his birth mother, but he had an ongoing relationship with Mr. Parenti, who made child support payments, visited regularly, and brought D.P-O to spend time with Mr. Parenti's family. Compl. ¶ 32. In 2013, Mr. Parenti was awarded primary custody of D.P-O and brought D.P-O to live with him in Monterey, California. Compl. ¶¶ 34–35. When Mr. Parenti was incarcerated in February 2013 for three months, his cousin, Matthew Oberholtz cared for D.P-O. Compl. ¶ 36. Mr. Parenti began a separate period of incarceration in August 1, 2013 at Monterey County Jail ("Jail"), during which he kept in regular contact with his son, his mother, and his other family members. Compl. ¶¶ 40–42.

Throughout the first few months of his incarceration, Mr. Parenti told his mother that the Jail was not providing him with his prescribed blood pressure and psychotropic medications. Compl. ¶ 44. His mother complained to the Jail many times and even brought his medications to the Jail and gave them to the nurse to ensure that Mr. Parenti received them. Compl. ¶ 44. On or around both January 10 and January 12, 2014, Mr. Parenti reported to the staff that he thought he had the flu. Compl. ¶¶ 45, 47. He was not called for sick call. Compl. ¶ 48. Around January 10, Mr. Parenti began to cough up blood, and this continued throughout the next few days. Compl. ¶¶ 46, 48.

On January 15, at breakfast around 3:45 a.m., Mr. Parenti appeared awake and alert. Compl. ¶ 49. At 9:45 a.m., Defendant Collins came to collect several inmates for a nurse visit, but Mr. Parenti, who was lying on his bunk, could not respond when Defendant Collins called his name several times. Compl. ¶¶ 50–51. Defendant Collins went to Mr. Parenti's bunk, said his name a few more times, and repeatedly tapped and shook him, but Mr. Parenti was unresponsive and had labored breathing. Compl. ¶ 52. Defendant Collins left the cell without summoning help.

---

[2] The Complaint was filed in 2014. D.P-O is now approximately 11 years old.

2

Compl. ¶ 53.

An hour later, at approximately 10:45 a.m., Mr. Parenti's cellmates noticed he had stopped breathing and his face had a bluish tint. Compl. ¶ 55. One inmate started CPR while the others attempted to call the deputies. Compl. ¶ 55. Deputies arrived first but did not attempt CPR; fire personnel and nurses then arrived and unsuccessfully attempted to resuscitate Mr. Parenti. Compl. ¶ 56. At 11:05 a.m., Mr. Parenti was pronounced dead. Compl. ¶ 57. Susan Parenti learned of her son's death from an inmate that night. Compl. ¶ 58.

The County's autopsy concluded that Mr. Parenti had died due to drug intoxication, but an independent autopsy commissioned by Susan Parenti concluded he had died from viral influenza syndrome complicated by pneumonia. Compl. ¶ 63. At the time of Mr. Parenti's death, Defendants knew that Monterey County was experiencing a high rate of influenza. Compl. ¶ 64. Another inmate died from influenza on January 20, 2014, after being taken to the hospital on January 12, 2014. Compl. ¶ 65. Plaintiffs allege that Defendants failed to provide appropriate medical care to Mr. Parenti, and this his death has caused substantial damage to Plaintiffs, including emotional distress and loss of physical and financial support. Compl. ¶¶ 66–73. Plaintiffs also allege that the Jail has had a history of providing inadequate medical care to its inmates since at least 2007, and that Defendants knew of these failings. Compl. ¶¶ 19–26.

On December 15, 2014, Plaintiffs initiated this lawsuit against Defendants. ECF 1. Defendants California Forensic Medical Group and Dr. Taylor Fithian were dismissed on October 5, 2017. ECF 99. After substantial discovery, resolution of a summary judgment motion, and motions in limine briefing, the parties reached an agreement resolving the case. ECF 131, 133.

## II. LEGAL STANDARD

"District courts have a special duty, derived from Federal Rule of Civil Procedure 17(c), to safeguard the interests of litigants who are minors." *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011). "Rule 17(c) provides, in relevant part, that a district court 'must appoint a guardian *ad litem*—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action.'" *Id.* (quoting Fed. R. Civ. P. 17(c)). "In the context of proposed settlements in suits involving minor plaintiffs, this special duty requires a district court

3

to 'conduct its own inquiry to determine whether the settlement serves the best interests of the minor.'" *Id.* (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)).

In cases involving the settlement of a minor's federal claims, a district court must consider whether the proposed settlement is fair and reasonable as to each minor plaintiff. *Id.* at 1182. "[T]he district court should evaluate the fairness of each minor plaintiff's net recovery without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel—whose interests the district court has no special duty to safeguard." *Id.*

While the *Robidoux* Court expressly limited its holding to settlement of a minor's federal claims, "district courts have found the *Robidoux* rule reasonable in the context of state law claims and have applied the rule to evaluate the propriety of a settlement of a minor's state law claims as well." *Frary v. Cnty. of Marin*, Case No. 12-cv-03928, 2015 WL 3776402, at *1 (N.D. Cal. June 16, 2015); *see also Mitchell v. Riverstone Residential Grp.*, No. S-11-2202, 2013 WL 1680641, at *1 (E.D. Cal. Apr. 17, 2013) (collecting cases). California law, which governs the state law causes of action, also requires that a settlement for a minor be approved by the court. *See* Cal. Prob. Code § 3601; Cal. Fam. Code § 6602.

### III. DISCUSSION

Defendants settled this case for $365,000. Plaintiffs' counsel seek fees of 40% of Susan Parenti's recovery and 25% of D.P-O's recovery. *See* Mot. at 3–4. Plaintiffs' counsel also is due costs of $85,802.98, to be taken from Plaintiffs' recoveries in proportion to each Plaintiff's individual recovery. Susan Parenti is to receive 40% of the total recovery ($146,000), and D.P-O is to receive 60% of the total recovery ($219,000). After subtracting fees ($58,400) and her proportion of the costs ($34,321.19), Susan Parenti will receive $53,278.81. After subtracting fees ($54,750) and his proportion of the costs ($51,481.79), D.P-O will receive $112,768.21. D.P-O's recovery will be deposited into a custodial Uniform Gifts to Minors Act account in his name. Oberholtz Decl. ¶ 4, ECF 139. Mr. Oberholtz created this account in February 2018 and has already placed approximately $100,000 in the account for D.P-O. *Id.* D.P-O is the owner of the account but cannot access it until he reaches the age of 18. *Id.*

The compromise is consistent with other cases in California. *See E.R. v. Cty. of Stanislaus*,

4

2016 WL 3354334, at *3 (E.D. Cal. June 16, 2016), *report and recommendation adopted*, 2016 WL 4011718 (E.D. Cal. July 26, 2016) (minor plaintiffs each received $19,000 of $150,000 total settlement where father committed suicide in prison after jail failed to hold him in a safety cell for the doctor-recommended period of time); *E.S. by & through Gonzalez v. City of Visalia*, No. 1:13-CV-1697-LJO-BAM, 2015 WL 6956837, at *3 (E.D. Cal. Nov. 3, 2015), *report and recommendation adopted*, 2015 WL 13215675 (E.D. Cal. Nov. 20, 2015) (minor paid $130,444.83 of $600,000 total in action involving the shooting and killing of minor's father); *Armstrong v. Dossey*, 2013 WL 4676541 (E.D. Cal. Aug. 30, 2013) (minors received $22,500 and $11,000, respectively, of $82,500 total for defendants' failure to provide medical care); *Doe ex rel. Scott v. Gill*, 2012 WL 1939612 (N.D. Cal. May 29, 2012) (minor received $7,188.85 of $50,000 in case involving police's allegedly unlawful killing of mother during arrest).

The Court also finds the request for attorney's fees totaling approximately 33% of the recovery (including 25% from D P-O.'s recovery and 40% from Susan Parenti's recovery) is reasonable. The case was on the eve of trial and involved much diligent effort by Plaintiffs' attorneys, and the parties engaged in extensive negotiations with a magistrate judge to reach settlement. *See generally* Mot.

In light of the facts of the case, the minor's claims against Defendants, and the settlement of disputes regarding prisoner-rights litigation, the Court finds that the net amount to be distributed is fair and reasonable. The terms achieve the goal that D.P-O and his guardian had for bringing the lawsuit. Accordingly, the Court APPROVES the settlement of D.P.-O's claims.

## IV. ORDER

Based on the foregoing, it is hereby ORDERED that:

1. The Court APPROVES the settlement on behalf of the minor as set forth herein.

2. D.P-O's guardian, Matthew Oberholtz, is authorized and directed to execute any and all documents reasonably necessary to carry out the terms of the settlement.

3. D.P-O's guardian, Matthew Oberholtz, is authorized and directed to place D.P-O's net proceeds into his existing Uniform Gift to Minors Act account. Neither D.P-O nor his guardian or other representative may withdraw any funds from this account until D.P-O is 18

5

years old without prior Court approval.

4. All future dates and deadlines in this case are VACATED.

5. The parties shall file, a stipulation regarding dismissal of this case or a written status report **on or before April 30, 2019**.

**IT IS SO ORDERED.**

Dated: March 18, 2019

_____
BETH LABSON FREEMAN
United States District Judge